THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES SMITH, Defendant-Appellant.

Fifth District   No. 5—91—0820

Opinion filed June 7, 1993.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Charles E. Smith, was convicted after a bench trial in the circuit court of Jackson County of residential burglary, criminal sexual assault, theft (under $300), and aggravated criminal sexual assault. He was sentenced to four years' imprisonment for the residential burglary, to be served consecutively with his sentence of 10 years' imprisonment on the aggravated criminal sexual assault. Defendant was also ordered to pay restitution of $535 for the criminal sexual assault. No sentence was imposed on the theft conviction. Defendant appeals his convictions, arguing: (1) the court erred in denying his motion for appointment of an expert witness; (2) the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault; (3) the aggravated criminal sexual assault statute is unconstitutional; (4) because there was only one sexual assault and because criminal sexual assault is a lesser-included offense, one of his convictions must be reversed; and (5) the trial court erred in finding defendant guilty of any charges when

the victim could not identify her assailant. We affirm in part and vacate in part.

At defendant's bench trial, the victim testified that in the early morning hours of September 8, 1988, she was awakened by someone falling on top of her in her bed. The assailant told her not to scream and pulled the covers over her head. He asked her if she had any money to which she replied she had some in her purse in the kitchen. The assailant turned on the light above her bed and brought her purse into the bedroom. The victim's purse contained four $20 bills and three $1 bills. The assailant then turned off the light, undressed, and urinated on the floor. He pulled the covers off the victim, pulled off her underpants, and got on top of her. The assailant asked her several times, "You don't want me to kill you, do you?" After the sexual assault, the assailant made her face the wall. He then turned on the light again and got dressed. She asked him how he had gotten into her house. The assailant informed her he came through the front window. Once the assailant left, the victim called the police. The victim had not been able to see her assailant's face, but she did notice he was wearing a black jacket and baseball cap.

At approximately 1 a.m. on September 8, 1988, a Carbondale police officer encountered a black man in the area of the victim's house. The man identified himself as Charles Smith and gave the officer information concerning people fleeing from a truck. At approximately 3:50 a.m. the same morning, the officer responded to a call at the victim's house for a sexual assault and burglary. In searching the victim's house, the police found latent fingerprints on the lower part of the frame of one of the front windows, on the lamp above the victim's bed, and on a wine bottle recovered from the freshly mowed yard. The fingerprints matched those of defendant.

Defendant denied assaulting the victim. He told the police he had been at his girlfriend's house from 1 a.m. until 9 a.m. the day of the assault. The girlfriend did not confirm defendant's story, however. She informed the police defendant arrived at her house between 3:30 and 4 in the morning asking for a ride home. She noticed defendant had some $20 bills and $1 bills in his possession and was wearing a black shirt, black pants, and a cap. The victim's home was 3½ blocks from that of defendant's girlfriend. The girlfriend called a cab for defendant, a fact confirmed by a dispatcher for Yellow Cab.

Other evidence recovered from the crime scene included hair fragments found in the victim's purse and on her bed sheets which matched defendant's hair standards. Analysis of semen stains did not eliminate defendant as the assailant, but because of the large percentage of people who could have donated the semen, the trial court refused to consider the evidence. Lastly, lab reports indicated both the victim and defendant tested positive for the same strain of gonorrhea. The victim testified that to the best of her knowledge she did not have gonorrhea prior to the assault. The trial court found defendant guilty of residential burglary, criminal sexual assault, theft (under $300), and aggravated criminal sexual assault based on bodily harm through the use or threat of force and the transmittal of a sexual disease.

Defendant first argues on appeal the trial court erred in denying his motion for appointment of an expert witness and for DNA testing. Defendant believes such a request was crucial to his defense because the State's expert would testify that the tested seminal material could have originated from defendant. The trial court denied defendant's request because of a Cook County circuit court ruling barring the use of DNA evidence on the grounds the FBI's data base for African-American males is faulty. The court commented that if the test results proved unfavorable to defendant he would employ the Cook County ruling in an effort to exclude the evidence. The court further found defendant's motion to be untimely, having been filed one day before the scheduled trial date. The State claimed the DNA testing procedures would have required a minimum delay of six to eight months.

■■ ■ It is true that a person accused of an offense must be given a full opportunity to present a defense and offer witnesses to establish said defense. (*People v. Kegley* (1988), 175 Ill. App. 3d 335, 339, 529 N.E.2d 1118, 1120.) Illinois has long recognized that an indigent defendant may be entitled to funds to hire an expert witness where expert testimony is deemed critical to a proper defense. (*People v. Clankie* (1989), 180 Ill. App. 3d 726, 730, 536 N.E.2d 176, 179; *Kegley*, 175 Ill. App. 3d at 339, 529 N.E.2d at 1120; see also *People v. Watson* (1966), 36 Ill. 2d 228, 234, 221 N.E.2d 645, 648.) Such entitlement is established when the defendant demonstrates the expert services sought are necessary to prove a crucial issue in the case and when the defendant's financial inability to obtain his own expert will prejudice his case. (*Clankie*, 180 Ill. App. 3d at 730, 536 N.E.2d at 179.) This does not mean, however, appointment of an expert witness is automatic once such enti-

tlement is shown. The right to such assistance may be waived when not presented in a timely fashion. (*Clankie*, 180 Ill. App. 3d at 730, 536 N.E.2d at 179.) Additionally, the defendant must identify a specific expert and give the trial court an estimate of the fees involved. Failure to do so justifies denial of the defendant's request. (See *People v. Hebel* (1988), 174 Ill. App. 3d 1, 34, 527 N.E.2d 1367, 1388; see also *People v. Winfrey* (1973), 11 Ill. App. 3d 164, 166, 298 N.E.2d 413, 414.) Here defendant did neither. Defendant specified no expert or testing laboratory and presented his request one day prior to the scheduled trial date. Under such circumstances, we cannot say the trial court erred in denying defendant's request. More importantly, the trial court determined that DNA testing was not crucial to defendant's case when at least one other court has found the data base for African-American males to be faulty and the court already had excluded the State's use of seminal comparisons. A trial court possesses a wide area of discretion in allowing expert testimony which it feels will aid in the understanding of the issues in a particular case. (See *People v. Mack* (1989), 128 Ill. 2d 231, 250-51, 538 N.E.2d 1107, 1116; see also *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 516, 388 N.E.2d 844, 847.) Expert testimony obviously would not be helpful in resolving the question of the assailant's identity in this instance if the court believes such testing procedures are not trustworthy. (See *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 432, 574 N.E.2d 1345, 1357.) Additionally, the court eliminated the need for DNA testing by refusing to accept the State's evidence with respect to the seminal material. Ultimately, we are not to reverse a trial court's decision pertaining to the appointment of a State-paid expert unless such decision constitutes an abuse of discretion. (*Clankie*, 180 Ill. App. 3d at 730-31, 536 N.E.2d at 179.) We find no abuse of discretion in this instance.

Even assuming defendant should have been allotted money for DNA testing, any error in the trial court's refusal in this instance was harmless. (See *Hebel*, 174 Ill. App. 3d at 35, 527 N.E.2d at 1389.) Defendant's guilt was proved beyond a reasonable doubt. Defendant's fingerprints were found at the scene of the assault on the window frame through which the assailant entered the victim's house and on the lamp above the victim's bed which the assailant turned off and on at least twice. The victim had not known defendant prior to being attacked, and defendant offered no explanation for the presence of his prints in her home. Obviously the fingerprints could have been impressed only at the time the offense was

committed. (See *People v. Rhodes* (1981), 85 Ill. 2d 241, 249-51, 422 N.E.2d 605, 608-09.) Clearly defendant was proved guilty beyond a reasonable doubt even without reference to other circumstantial evidence implicating defendant as the assailant (*i.e.*, clothing, time and vicinity of offense, denominations of money stolen, hair samples, and presence of same strain of sexually transmitted disease). The trial court's refusal to appoint an expert to conduct DNA testing under such circumstance, if error at all, constituted nothing more than harmless error.

Defendant next argues on appeal he was not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault by causing bodily harm to the victim in transmitting a sexual disease when there was no proof the victim did not have the disease prior to the assault. We disagree.

A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276; *People v. Meador* (1991), 210 Ill. App. 3d 829, 830, 568 N.E.2d 1386, 1387.) The relevant inquiry is whether, after viewing the evidence, whether it be direct or circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Campbell* (1992), 146 Ill. 2d 363, 374, 586 N.E.2d 1261, 1266; *People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1025, 554 N.E.2d 556, 562.) It is not our function to substitute our judgment or retry defendant; resolution of factual disputes and the assessment of the credibility of witnesses are for the trier of fact. (*Meador*, 210 Ill. App. 3d at 830, 832, 568 N.E.2d at 1387, 1388; *Geneva*, 196 Ill. App. 3d at 1026, 554 N.E.2d at 562.) The trial court here resolved the matter against defendant; we cannot say the trial court erred.

■ Aggravated criminal sexual assault occurs when an individual commits criminal sexual assault and causes bodily harm to the victim. (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(2).) "Bodily harm" includes sexually transmitted diseases. (Ill. Rev. Stat. 1991, ch. 38, par. 12—12(b); see also *People v. Rodarte* (1989), 190 Ill. App. 3d 992, 999, 547 N.E.2d 1256, 1260.) Here the victim testified unequivocally and without contradiction that she did not have gonorrhea before the assault but was infected with the disease afterward. Tests conducted on defendant after the assault revealed he was infected with the same strain of gonorrhea. Although the medical expert could not determine who had the disease first, the trial

court logically could infer that defendant transmitted the disease to the victim during the criminal sexual assault. We cannot say such evidence is so unsatisfactory as to justify a reasonable doubt of defendant's guilt in this instance.

Defendant further contends the aggravated criminal sexual assault statute, with the aggravating factor being the transmission of a sexual disease, is unconstitutional because there is no requirement that the defendant knowingly or intentionally transmit the disease or act with culpable intent. What defendant refuses to recognize is that the evidence establishes he had the intent to commit criminal sexual assault against the victim and that he is responsible for the consequences of his criminal acts.

We initially note statutes are presumed constitutional, and any doubt should be decided in favor of the law's validity. (*People v. Haywood* (1987), 118 Ill. 2d 263, 271, 515 N.E.2d 45, 49.) Moreover, it is the province of the legislature to define offenses and determine the penalties required to protect society's interests. (*People v. Terrell* (1989), 132 Ill. 2d 178, 216, 547 N.E.2d 145, 161.) The legislature has determined that an individual who commits criminal sexual assault and, in so doing, transmits a sexually transmitted disease to his victim should be punished more severely than one who does not. We cannot say such a determination is unreasonable or irrational. Implicit in the offenses of criminal sexual assault and aggravated criminal sexual assault is a mental state of intent to commit, or knowledge of committing, an act of sexual penetration. (*Terrell*, 132 Ill. 2d at 209, 547 N.E.2d at 158.) And, when a defendant knowingly or intentionally engages in criminal activity, he should be held responsible for the consequences of his acts, even when the consequences of those acts are wholly unexpected. (*People v. Harris* (1980), 90 Ill. App. 3d 703, 705, 413 N.E.2d 499, 501; *People v. Rickman* (1979), 73 Ill. App. 3d 755, 759-60, 391 N.E.2d 1114, 1117-18.) The responsibility surely does not rest with the victim. Consequently, it is immaterial that defendant may not have known he was transmitting, or that he may not have intended to transmit, a sexual disease to the victim. Defendant also suggests the aggravated criminal sexual assault statute may be constitutionally overbroad. A statute is overly broad, however, if it may reasonably be interpreted to prohibit conduct which is constitutionally protected. (See *People v. Klick* (1977), 66 Ill. 2d 269, 273, 362 N.E.2d 329, 331; see also *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 209, 414 N.E.2d 731, 739.) A defendant's conduct in committing sexual assault clearly is not constitutionally protected. Conse-

quently, we find the aggravated criminal sexual assault statute to be constitutional and defendant to have been properly convicted of violating it.

■ For his fourth point on appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt of criminal sexual assault. Defendant claims the evidence was insufficient to prove he actually used force or the threat of force to commit an act of sexual penetration against the victim. Again, we disagree. The evidence supports the trial court's finding that the offense, including use of force, was proved beyond a reasonable doubt.

The victim testified she was home alone asleep in her bed when she was awakened by a man falling on top of her ordering her to be quiet. When she attempted to look at him, the assailant shoved her face into a pillow and said: "You don't want me to kill you, do you?" The man repeated this same question several times throughout the assault. The victim testified she was frightened of her assailant.

There is no definable standard fixing the amount of force which the State is required to prove to establish a criminal sexual assault; the degree of force and the amount of resistance depend upon the facts of the particular case. (*People v. Robinson* (1989), 199 Ill. App. 3d 24, 30, 556 N.E.2d 1204, 1208; *People v. Schmitt* (1981), 99 Ill. App. 3d 184, 188, 424 N.E.2d 1267, 1270.) Resistance is not necessary under circumstances where it would be futile or would endanger the victim's life or where the victim is overcome by superior strength or fear. (*Geneva*, 196 Ill. App. 3d at 1027, 554 N.E.2d at 563; *Schmitt*, 99 Ill. App. 3d at 188, 424 N.E.2d at 1270.) The element of force does not depend for its proof on actual physical damage to bodily tissue. (*Geneva*, 196 Ill. App. 3d at 1027, 554 N.E.2d at 563; *People v. Leonhardt* (1988), 173 Ill. App. 3d 314, 321-22, 527 N.E.2d 562, 567.) The circumstances of the assault here clearly show defendant used force or the threat of force to commit the act of sexual penetration. We therefore hold defendant was proved guilty of criminal sexual assault beyond a reasonable doubt. This does not end the inquiry, however.

■ Defendant also contends there was only one sexual assault; consequently, one of his convictions must be reversed as criminal sexual assault is a lesser-included offense of aggravated criminal sexual assault. The State counters defendant has waived any error by failing to object at trial or raise the issue in his post-trial motion. We reject the State's position. Under the holdings of *People v. Davis* (1992), 229 Ill. App. 3d 869, 594 N.E.2d 423, *appeal allowed*

(1992), 146 Ill. 2d 636, 602 N.E.2d 462, and *People v. Johnson* (1990), 200 Ill. App. 3d 1018, 558 N.E.2d 607, a conviction on a lesser-included offense is "void" if there also was a conviction for the greater offense, and an objection to the conviction for the lesser-included offense can be raised at any time. (*Davis*, 229 Ill. App. 3d at 870, 594 N.E.2d at 424; *Johnson*, 200 Ill. App. 3d at 1021-22, 558 N.E.2d at 609.) We therefore must address defendant's contention.

■ Defendant was convicted of both criminal sexual assault and aggravated criminal sexual assault on the basis of a single act of sexual penetration. The offense was enhanced because during the course of the assault, defendant caused the victim bodily harm through the transmission of a sexual disease. There was, however, only one single physical act. When a defendant is convicted of two offenses, one of which is a lesser-included offense of the other, and where a single physical act was the basis for both convictions, only one of the convictions can stand. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479.) Under the circumstances presented here, criminal sexual assault is a lesser-included offense of aggravated criminal sexual assault. (See *Geneva*, 196 Ill. App. 3d at 1029, 554 N.E.2d at 564; *People v. Boyer* (1985), 138 Ill. App. 3d 16, 19, 485 N.E.2d 460, 462.) We therefore must vacate defendant's conviction for criminal sexual assault.

■ Defendant's final contention on appeal is the evidence against him is so unsatisfactory that the trial court erred in finding him guilty of any charges. We conclude, however, the evidence establishes defendant's guilt beyond a reasonable doubt. Without detailing all of the evidence again, we note the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. (*Campbell*, 146 Ill. 2d at 380, 586 N.E.2d at 1268.) The evidence against defendant was more than sufficient to establish guilt. First, defendant's fingerprints were found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that they were impressed at the time the offense was committed. (*Campbell*, 146 Ill. 2d at 386, 586 N.E.2d at 1271; *Rhodes*, 85 Ill. 2d at 249, 422 N.E.2d at 608.) Additionally, the trial court found the testimony and comparisons of the State's fingerprint experts to be credible and trustworthy. Second, defendant was in the vicinity of the crime at the time of the offense. Defendant was seen near the victim's house at approximately 1:16 a.m. Between 3:30 and 4 a.m., defendant arrived at his girlfriend's house, 3½ blocks away from the vic-

tim's, dressed in black and carrying some twenties and ones. The police were dispatched to the victim's house at approximately 3:50 a.m. The victim described her assailant as being dressed in black and informed the police the assailant also had taken $83 (all in twenties and ones) from her wallet. Both the victim and defendant had the same strain of gonorrhea after the assault, a disease the victim testified she did not have prior to the assault. Third, analysis of seminal matter and hair found at the victim's house, while not conclusive, revealed defendant could not be eliminated as the assailant. We conclude the trial court properly found defendant guilty of all charges.

For the aforementioned reasons, we affirm defendant's convictions and sentences imposed for residential burglary, theft (under $300), and aggravated criminal sexual assault entered by the circuit court of Jackson County. We vacate defendant's conviction for criminal sexual assault.

Affirmed in part; vacated in part.

WELCH and LEWIS, JJ., concur.