THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER ANDERSON, Defendant-Appellant.

Third District   No. 3—89—0423

Opinion filed August 8, 1990.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Christopher Anderson, was charged with murder following the shooting death of Vicki Scarabello. Anderson filed motions to quash his arrest and to suppress evidence which the trial court granted. Thereafter, the State brought an interlocutory appeal to contest the trial court rulings, and this court reversed and remanded for further proceedings. (*People v. Anderson* (1988), 169 Ill. App. 3d 289.) Following a jury trial, Anderson was convicted of murder and was sentenced to an extended term of 75 years' incarceration.

On appeal, the defendant raises three arguments: (1) this court should reconsider its previous holding that the defendant's fourth amendment rights were not violated; (2) the defendant was denied a fair trial when the trial judge gave Illinois Pattern Jury Instruction,

Criminal, No. 26.01Q (2d ed. Supp. 1989) in its entirety (hereinafter IPI Criminal 2d No. 26.01Q (Supp. 1989)); and (3) the trial court erred in giving the defendant an extended-term sentence since none of the statutory extended-term eligibility factors applied to him. We affirm the defendant's murder conviction but reduce the defendant's 75-year extended-term sentence to 40 years, which is the maximum non-extended-term sentence permitted by section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)).

Given this court's disposition of the issues raised by this appeal, it is unnecessary to completely recite the facts, which are adequately set forth in our earlier opinion. (*People v. Anderson* (1988), 169 Ill. App. 3d 289.) The facts relevant to the questions presented by this appeal are as follows.

On November 20, 1986, Vicki Scarabello, 22 years old, was employed in the rental office of Oakwood Manor Apartments in Park Forrest, Illinois. Shortly before noon, Christopher Anderson entered Scarabello's office and inquired about renting an apartment. This was witnessed by Donald Rogers, an apartment maintenance man, who then left for lunch. According to the defendant's police statement, the defendant then returned to Scarabello's office because he wanted her to help him obtain a painting contract with the apartment complex and because he thought Scarabello was good looking and he wanted to try to date her. When the defendant tried to touch Scarabello around the waist, Scarabello pushed the defendant to the floor and a gun fell out of the defendant's coat pocket. The two then allegedly went for the gun and, as they struggled, Scarabello was shot twice in the neck. The defendant then fled from the rental office.

Park Forrest detectives Carl Kuester and Patrick Fitzgerald obtained information that a man fitting Anderson's description was the last potential apartment lessee to speak with the victim before she was murdered. The detectives also learned that Anderson, who lived near the apartment complex, had a prior conviction for armed robbery and that his Illinois driver's license had been suspended. On November 22, 1986, the two detectives arrested the defendant for driving with a suspended license. The defendant was then taken to the Park Forrest police department, where he gave the police permission to search his car. Several items were taken from the vehicle, including a small gun case, live rounds of ammunition, and proposal forms from the apartment complex where Scarabello had been employed. The police subsequently interrogated the defendant about his involvement in Scarabello's murder, and the defendant admitted that he was involved

in the Scarabello shooting incident but that it was an accident.

■ The defendant first argues that this court should reconsider our previous decision in *People v. Anderson* (1988), 169 Ill. App. 3d 289, wherein we found that the defendant's fourth amendment rights were not violated when he was arrested for a traffic violation and was then interrogated about his involvement in Scarabello's homicide. Applying a standard of objective reasonableness, this court found that both the valid custodial arrest and the subsequent investigatory procedures were reasonably undertaken and that no fourth amendment violations occurred. (*Anderson*, 169 Ill. App. 3d at 300.) Without pinpointing any legal or factual errors in our earlier opinion, the defendant in the present action merely reasserts the identical fourth amendment argument already litigated before this court. Under the doctrine of law of the case, we are precluded from reconsidering the defendant's fourth amendment claim and are bound by the particular views expressed in our earlier opinion. *People v. Weinger* (1981), 101 Ill. App. 3d 857.

The defendant next argues that he was denied a fair trial because the last paragraph of jury instruction IPI Criminal 2d No. 26.01Q (Supp. 1989) conveyed to the jury the idea that the defendant could be found guilty of both murder and involuntary manslaughter. The last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989) provided:

"If you find the State has proved the defendant guilty of both [greater offense] and [lesser offense], you should select the verdict form finding the defendant guilty of [greater offense] and sign it as I have stated. Under these circumstances, do not sign the verdict form finding the defendant guilty of [lesser offense]."

The defendant claims the instruction was erroneous since murder and involuntary manslaughter involve inconsistent mental states. We find that the defendant has waived any alleged error and that the inclusion of the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989) did not affect the fundamental fairness of the defendant's trial.

■ IPI Criminal 2d No. 26.01Q (Supp. 1989) was a defense-tendered instruction that was given over the State's objection. The defendant, who was charged with the offense of murder, requested the instruction on involuntary manslaughter in order to give the jury the option of finding him guilty of the lesser offense. The defendant did not object to the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989) nor did the defendant proffer an alternate instruction. Under these circumstances, the defendant has waived any issue concerning the propriety of IPI Criminal 2d No. 26.01Q (Supp. 1989).

(*People v. Almo* (1985), 108 Ill. 2d 54.) The waiver rule is designed so as not to permit a party failing to object to the complained-of erroneous instruction from gaining an advantage of obtaining a reversal premised upon his own failure to act. (*People v. Roberts* (1979), 75 Ill. 2d 1.) Consequently, we reject the defendant's untimely attempt to object to IPI Criminal 2d No. 26.01Q (Supp. 1989).

■■ ■ Additionally, we decline the defendant's request to apply Supreme Court Rule 451(c) in reviewing jury instruction IPI Criminal 2d No. 26.01Q (Supp. 1989). (134 Ill. 2d R. 451(c).) Supreme Court Rule 451(c) provides that substantial defects in jury instructions are not waived by the failure to make timely objections if the interests of justice require. (*People v. Roberts* (1979), 75 Ill. 2d 1.) This rule, however, only applies to correct grave errors, or to cases which are factually close and fundamental fairness requires that the jury be properly instructed. (*People v. Huckstead* (1982), 91 Ill. 2d 536.) In the instant case, the jury was properly instructed as to the essential elements of the offenses of murder and involuntary manslaughter. The jury subsequently returned a verdict of guilty of murder based on the overwhelming evidence presented at trial. Accordingly, the defendant was not substantially prejudiced by the inclusion of the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989) such that the interests of justice would require the relaxation of the waiver rule.

■■ ■ Finally, the defendant contests his 75-year extended-term sentence since he argues that none of the statutory extended-term eligibility factors applied to him. Under section 5—8—2 of the Unified Code of Corrections, a sentence for murder cannot exceed the maximum term of 40 years' imprisonment, as set out in section 5—8—1, unless aggravating factors, as set out in section 5—5—3.2(b), are found to be present by the trial judge. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—2(a)(1), 1005—8—1(a)(1), 1005—5—3.2(b)(2).) Where specific aggravating factors are found, the term may be extended to 80 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(1).) Here, the trial court, in sentencing the defendant to an extended term, characterized the shooting incident as a "tragic killing" and considered the following factors in aggravation: (1) the defendant's prior juvenile record, which indicated that the defendant had committed an armed robbery on a young female wherein the defendant forced the victim to disrobe and then fondled her breasts and pubic area; and (2) evidence which revealed that the motivating force behind the defendant's entry into the apartment complex was the defendant's sexual attraction to Scarabello. While these are not improper factors to be considered in sentencing the defendant to a nonextended-term, these factors do not

make the defendant eligible for an extended-term sentence. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b).) Nevertheless, the State argues that a review of the trial judge's sentencing determination adequately indicates the existence of one of the eligibility factors for the imposition of an extended term; that being that the murder of Scarabello was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(2).) We disagree with the State's position for two reasons. First, the trial judge's comments during sentencing do not reflect that the court made the determination that the murder was exceptionally brutal and heinous. Second, we do not believe that the murder in this case was exceptionally brutal and heinous within the meaning of section 5—5—3.2(b)(2).

The trial judge in instructing the jury defined "murder" as follows:

> "A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual or another."

For most people, all murders, by definition, are brutal and heinous to some extent. Section 5—5—3.2(b)(2), however, only permits trial courts to impose an extended-term sentence for murder if the murder is "exceptionally" brutal and heinous. The Illinois Supreme Court in *People v. Andrews* (1989), 132 Ill. 2d 451, recently examined whether the seemingly unnecessary fatal shooting of a defenseless victim as part of an armed robbery constituted exceptionally brutal or heinous behavior indicative of wanton cruelty. In *Andrews*, the 18-year-old victim died as a result of a gunshot wound to his right temple. In finding that the trial court abused its discretion in imposing an extended-term sentence, the supreme court stated:

> "Although the victim was defenseless and the defendant could have achieved his goal of robbing the victim and the victim's girlfriend without killing the victim, every single murder is by nature unnecessary; section 5—5—3.2(b)(2), however, requires that the murder be "exceptionally" brutal or heinous. All murders are brutal and heinous to a certain degree. Moreover, many murdered robbery victims are defenseless when killed. Section 5—8—2, however, allowing for extended-term sentences, 'was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence.' *People v. Evans* (1981), 87 Ill. 2d 77, 88-89." *Andrews*, 132 Ill. 2d at 465-66.

██ Similarly, the murder in the instant case did not rise to the higher level of cruelty so as to warrant the imposition of an extended-term sentence. In the case at hand, Scarabello was killed by two gunshot wounds to the neck, which were fired at close range and in rapid succession. If the extended-term sentence statute were applied to this killing, it would be difficult to conceive of a murder to which the extended-term sentence would not apply. Rather, the extended-term provision is meant for murders that go beyond the mere infliction of death.

Accordingly, we vacate the defendant's 75-year extended-term sentence for murder and sentence the defendant to 40 years' imprisonment, which is the maximum nonextended-term sentence permitted by section 5—8—1(a)(1) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)).

Affirmed in part; vacated in part.

SCOTT and STOUDER, JJ., concur.